IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

EDUARDO NUNEZ PICHARDO,
aka EDDIE NUNEZ,

        Defendant.
        _____/

CR. NO. S-06-0277 LKK (GGH)

ORDER VACATING RELEASE ORDER

        Defendant, Eduardo Nunez Pichardo, has been indicted for a conspiracy to distribute cocaine and methamphetamine. If convicted, Pichardo faces maximum penalties of life in prison and a ten year mandatory minimum. The government's theory of the case, as explained in the complaint, indicates that Pichardo was a rather large distributor of drugs for which he received a great deal of money over the years. As far as the undersigned knows from the complaint, the government's case is primarily based on the statements of persons who performed drug distribution activities at the behest of Pichardo, as well as the fact that Pichardo amassed large asset amounts not persuasively explained by verified, legitimate income.

        The government moved to detain Pichardo pending trial. On June 28, 2006, the undersigned ordered Pichardo released on conditions, including the posting of a one million

1

dollar bond secured by real property.  The size of the bond, not objected to by Pichardo, was based upon evidence suggesting that Pichardo had access to large sums of money and other assets.

  At the hearing, government counsel asserted that Pichardo might have access to real property in Mexico, and could easily flee and support himself and his family there.  Counsel was candid with the court that he had no firm evidence of such property.  However, the questions raised by the government's proffer initiated a dialogue between the court and defense counsel concerning the government's assertions.  Defense counsel (Clyde Blackmon) represented to the court that his client owned no property "outside of California."  After conferring with counsel at sidebar concerning Pichardo's willingness to confirm his no-ownership of non-Californian real property, and after carefully inquiring at sidebar about Pichardo's willingness to waive his Fifth Amendment rights in the narrow area of property acquisition/ownership, and after defense counsel privately conferred with Pichardo, the undersigned received an unequivocal waiver of Fifth Amendment rights in that narrow area.  Although the government continued to indicate that ownership of real property in Mexico was the property of concern, in order to understand the extent of Pichardo's assets *anywhere*, the undersigned utilized defense counsel's terminology and asked Pichardo:

  1. Do you hold any interest in real property outside the State of California?

  2. Does anyone hold an interest in property on your behalf when that property is located outside the State of California?

  3. Have you assisted anyone in purchasing or acquiring an interest in real property outside of the State of California?

  Defendant Pichardo's wife was also called to testify to the above three questions.  The terminology varied in insubstantial form, and Mrs. Pichardo was also asked specifically: "Have you assisted anyone in purchasing or acquiring an interest in real property outside of the State of California?"  Both defendant and Mrs. Pichardo answered in the negative to all questions

*under oath.*

One day later (June 29, 2006) the government moved the undersigned to reconsider the release order. The government provided substantial documentary evidence which indicated that defendant and/or Mrs. Pichardo had been untruthful with respect to all or some of the above questions. Specifically, the government produced evidence that the Pichardos owned real property in Florida, and had indicia of ownership of that property located at their residence – albeit the title to the property was held in the name of another.

On July 6, 2006, the government filed a supplemental memorandum proffering that Pichardo had purchased motor vehicles with nominal ownership in the names of third persons. The purpose of the filing was to suggest that Pichardo engaged in the practice of hiding assets via a straw purchaser.

The defense filed no written opposition, but vigorously participated in an opposition to the motion to reconsider. At the suggestion of counsel, the court first heard a lengthy proffer from the defense with respect to the Florida property. The defense was clear that if required, witnesses were in the courtroom to back up the proffer. After hearing and discussing the proffer, the court determined that the calling of witnesses would not ultimately direct the undersigned's decision, and might well complicate matters for the witnesses in terms of perjury prosecutions.

First, the defense asserted that both Pichardos were confused by the questioning, and that they had focused upon Mexico when answering the court's questions. The undersigned rejects this in that obviously the Pichardos had informed defense counsel that they owned no real property outside the State of California (and not just in Mexico) – a fact represented by counsel to the court. The court's three questions to both Pichardos each repeated the phrase "outside the State of California." The questions could not have been clearer. The Pichardos were not uneducated, had no apparent trouble in understanding the court's questions, and asked no questions, or hesitated or did anything which would put the court on notice that some possible

misunderstanding was in the air. Indeed, as proffered at hearing, Mrs. Pichardo worked in the real estate industry, and would especially not be confused about the questions. The court does not find that the Pichardos misunderstood the court's questions such that they truly believed only Mexican property was at issue.

   The proffer detailed what could only be described as a convoluted explanation concerning that what appeared to be the purchase of property outside the State of California through a straw owner was in reality a kind deed between related persons which did not ultimately, financially benefit the Pichardos. According to the proffer, Mrs. Pichardo, a real estate professional, was asked to help the related Pereiras acquire property in the name of their son (Edward) who desired to attend flight school in the State of Florida. Without the slightest drafting of any written understanding or contract, something antithetical to persons within the real estate industry, the Pichardos advanced all monies for the purchase of the Florida property – sums in excess of $97,000. Although the transaction was purportedly designed in part to foster financial responsibility on the part of Edward Pereira, as well as aid his flight school attendance, no proof was proffered that Edward himself paid a dime with respect to the property.[1] Indeed, Edward never went to Florida and has yet to attend any flight school there. The Pichardos, at least for a substantial time, paid the homeowners association dues for the subject property, and had keys to the property at the time of the recent search. Finally, the evidence about straw purchasers for vehicles lent weight to the government's argued theory that a straw purchase was made for the Florida property.

   But in any event, even assuming that convolutions are the truth in this case (very doubtful), the fact remains that even under the convoluted story, the Pichardos answered under oath that they had not assisted anyone in acquiring real property outside the State of California.

---

[1] The proffer did include an assertion that the Pereiras ultimately reimbursed the Pichardos, but it is entirely unpersuasive and unclear that the Perieras had to seek the financial assistance of the Pichardos in the first place.

1  As previously stated the court is not persuaded that the Pichardos were "confused" about what
2  "outside the State of California" meant.
3  　　　Thus, the undersigned must decide whether being untruthful under oath impacts
4  the revocation of pretrial release decision.  Of course it does.  If one is desperate enough to be
5  untruthful under oath, one is similarly desperate enough to flee to avoid a ten year mandatory
6  minimum, and perhaps longer incarceration.  And, while the government certainly has
7  knowledge of some assets, it probably does not have knowledge of all assets.  Evidence was
8  introduced to demonstrate very high expenditures on the part of the Pichardos, e.g., installation
9  of a $150,000 home entertainment set-up, and despite a proffer concerning refinancing to the
10 contrary, it is doubtful that a person with little verified income could normally support such
11 expenditures.  In sum, in light of the untruthfulness and access to large sums of money or other
12 assets, the government has met its burden of demonstrating flight risk by a preponderance of the
13 evidence.
14 　　　ACCORDINGLY, the previous oral order of release is revoked, and the defendant
15 is ordered detained.
16 DATED: 7/19/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
pichardo.ord